UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CARLA M. MCAFEE,

    Plaintiff,

v.

GEORGE PHIFER,

    Defendant,

and

HURON CLINTON METROPOLITAN AUTHORITY,

    Defendant,

_____/

JEANNE V. BARRON (P37138)
RAFTERY & BARRON, P.C.
Attorney for Plaintiff
32901 Middlebelt Road, Suite 500
Farmington Hills, MI 48334
(248)538-2400
Fax: (248) 538-5126
Email: jeanne@rjhlaw.com
_____/

## COMPLAINT

NOW COMES, the Plaintiff, CARLA M. MCAFEE, by and through her attorneys, RAFTERY & BARRON, P.C., and for her Complaint against GEORGE PHIFER, and the HURON CLINTON METROPOLITAN AUTHOIRTY, hereby states as follows:

### GENERAL ALLEGATIONS

*The Parties, Jurisdiction, and Venue:*

    1.    Plaintiff, Carla M. McAfee, ("Plaintiff") is a natural person, and resident of the City of Farmington Hills, County of Oakland, and State of Michigan.

    2.    Defendant George Phifer, ("Defendant Phifer") is a natural person, and resident of the City of Pontiac, County of Oakland, and State of Michigan.

3. Defendant Huron Clinton Metropolitan Authority, ("Defendant Huron Clinton") is an entity of the State of Michigan, and resident of the City of Brighton, County of Livingston, and State of Michigan.

4. Under 42 U.S.C. §2000 e-2 *et seq.* it shall be an unlawful employment practice for an employer –

> (1) to fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to her compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin, or
> (2) to limit, segregate or classify her employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect her status as an employee, because of such individual's race, color, religion, sex, or national origin.

5. Under 2 U.S.C. §1311, "All personnel actions affecting covered employees shall be made free from any discrimination based on –

> race, color, religion, sex, or national origin within the meaning of section 703 of the Civil Rights Act of 1964."

6. This complaint also arises under the Michigan Elliot Larsen Civil Rights Act M.C.L. § 37.2101 *et seq.* ("ELCRA").

7. The ELCRA provides that an employer shall not do any of the following:

> Fail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of religion, race,

color, national origin, age, sex, height, weight or marital status. M.C.L. §37.2202(1)(a).

8. The ELCRA defines sexual harassment as the following: unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct or communication of a sexual nature under the following conditions:

   (i) Submission to the conduct or communication is made a terms or condition either explicitly or implicitly to obtain employment, public accommodations or public services, education or housing.

   (ii) Submission to or rejection of the conduct or communication by an individual is used as a factor in decisions affecting the individual's employment, public accommodations or public services, education, or housing.

   (iii) The conduct or communication has the purpose or effect of substantially interfering with an individual's employment, public accommodations or public services, education, or housing, or creating an intimidating, hostile, or offensive employment, public accommodations or public services, educational or housing environment.

9. This Court has jurisdiction in this action pursuant to 28 U.S.C. §1331 and §1343.
10. This Court has pendent jurisdiction of Plaintiff's ELCRA claim.
11. Plaintiff has satisfied the administrative prerequisites to the filing of this action, and possesses a right to sue letter from the Equal Employment Opportunity Commission dated April 19, 2019; the parties also agreed to extend and/or toll the

    Statute of Limitations until October 10, 2019, to allow the parties additional time to try to amiably resolve this matter.

12. Additionally, Plaintiff's Complaint as timely, as it is filed within the three year statute of limitations period applicable under Title VII and the ELCRA respectively.

13. Venue is appropriate, under 28 U.S.C. §1391, since the substantial part of the events giving rise to this action occurred in this District, Plaintiff and Defendants each reside in this district, Defendant Huron Clinton conducts its business in this District.

*Plaintiff's Employment:*

14. Plaintiff began working for the Huron Clinton Metropolitan Authority in February of 2016, as a Multimedia Graphic Design Specialist in the Administrative Office.

15. Defendant George Phifer was Plaintiff's immediate supervisor.

16. Defendant Phifer promoted Plaintiff to Multimedia Design Supervisor on April 7, 2016.

17. Defendant Phifer extended Plaintiff's probationary period for another year on October 27, 2016, allegedly because she came in late, gave too much feedback to staff, and had not taken an even amount of notes on all staff.

18. On July 25, 2017 Plaintiff was informed that her position had been demoted.

19. On October 13, 2017, Plaintiff informed Defendant Huron Clinton that she has decided to go to the EEOC.

20. On June 14, 2018, Plaintiff was placed on administrative leave for 14 business days.

21. On July 2, 2018, Plaintiff attempted to return to work at the conclusion of her leave but was informed that, prior to being allowed to return to work she would have to see the company psychologist, Dr. Linda Forsberg.

22. On July 5, 2018, Plaintiff's administrative leave was extended.

23. On July 24, 2018, Plaintiff was notified via email that her administrative leave was extended on the recommendation of Dr. Forsberg.

24. On August 30, 2018, Plaintiff's paid administrative leave ends.

25. Plaintiff requested a severance package on September 7, 2018.

26. Plaintiff's medical insurance and other benefits have been terminated as of April 30, 2019.

27. To date Plaintiff has not received a termination of employment letter from the Huron Clinton Metropolitan Authority.

*Sexual Harassment by Defendant Phifer:*

28. On February 29, 2016, Plaintiff was called to Defendant Phifer's office, given a pay raise and told that he wanted "to see if she was management material;" this was Plaintiff's first day of work.

29. On March 10, 2016 Defendant Phifer called Plaintiff into his office to talk about what Plaintiff was wearing. a black dress and blazer; He said that he liked what Plaintiff was wearing and made an "ok" sign with his hands. His comment made Plaintiff uncomfortable.

30. In March of 2016, Defendant Phifer would ask Plaintiff to meet with him in his office, the office door was locked during these meetings, Plaintiff was very uncomfortable during this meetings.

5

31. Defendant Phifer also asked that Plaintiff have two phones, Plaintiff was hesitant, but Defendant Phifer told her she "needed to have two phones in case there was ever an investigation."

32. In April of 2016, Defendant Phifer took Plaintiff out to lunch at Applebee's, Plaintiff was uncomfortable because Defendant Phifer had asked her to leave 15 minutes after he left so no one would know they were having lunch together. At the lunch Plaintiff felt very uncomfortable, because it was apparent Defendant Phifer was trying to ", make a pass at her." When she began to speak about her husband and her church, stopping any inference that was interested in a relationship with Defendant Phifer, Defendant Phifer abruptly said he had to leave and left immediately.

33. In May of 2016, Defendant Phifer told Plaintiff's co-workers that she was not to eat lunch with them anymore because she was a supervisor; Defendant Phifer then began calling Plaintiff's desk phone during her lunch hour to verify that she was at work.

34. Plaintiff began to become concerned because she did not feel she could report Defendant Phifer's behavior without him knowing, and that he might retaliate against Plaintiff or her coworkers.

35. After Plaintiff rebuked Defendant Phifer there began a pattern of retaliation against Ms. McAfee including:

    - Phifer advises co-workers not to eat lunch with Ms. McAfee,
    - Phifer calling Ms. McAfee to check up on her,
    - Phifer yelling at and berating Ms. McAfee,

- Phifer began calling Ms. McAfee after work and on weekends early in the morning; her hours stretched to 9-12 hour shifts;
- Phifer would try to publicly degrade and humiliate Ms. McAfee;
- Wrongfully extending Ms. McAfee's probation for another year even though Ms. McAfee had no prior notice of any threatened disciplinary activity,
- Refusing to allow her to attend training that was supposedly necessary for her improvement on the job;
- Thwarting her ability to supervise employees under her direction;
- Ms. McAfee was removed from extended probation in February of 2017 and sexual harassment began again with an obvious attempt to make Ms. McAfee feel that cooperating with Director George Phifer's sexual overtones controlled her ability to have a job and be successful.

36. On April 11, 2017, At the Go Ape Grand Opening at Stony Creek Metropark, Defendant Phifer tried to touch Plaintiff's arm and back, Plaintiff stepped away and got really nervous. Again, Plaintiff was concerned that Phifer would again try to sexually harass her, and she was worried that he wanted sexual favors in exchange for taking Plaintiff off probation.

37. On June 8 2017, at a board meeting during lunch, Defendant Phifer said to Plaintiff, "Plaintiff needed to eat because she's a growing girl." He looked her body up and down and made an ok gesture with his hands. Then he said that it was ok for her to eat because, "She looks good." Plaintiff was embarrassed and

7

emotionally distraught because this comment was made in front of other staff. Plaintiff never observed Phifer treating a female employee in this way.

38. On June 21, 2017, Defendant Phifer was put on paid administrative leave pending an internal investigation; Huron Clinton Metropolitan Authority was well aware that Ms. McAfee's complaints were not the first time that anyone complained Director George Phifer sexually harassed them:

- Complaints about Director George Phifer went back to at least 2010, with no corrective action taken whatsoever until on August 14, 2017 Director George Phifer resigned his position and Michael Reese became acting director.

39. On July 18, 2017, Plaintiff received a missed call from a restricted number; she later found out that the call was from Defendant Phifer.

40. On July 25, 2017, Defendant Phifer called Plaintiff from the same restricted number.

41. Plaintiff felt threatened, Plaintiff called CFO Michelle Cole and Commissioner Marans to let them know that Defendant Phifer had just called her.

42. On October 13, 2017, Plaintiff informed the Huron Clinton Metropolitan Authority that she would be going to the EEOC.

*Hostile Environment Created by Defendant Huron Clinton:*

43. On July 26, 2017, Plaintiff received a phone call from HR Manager Randy Rossman. Plaintiff inquired about the removal of the posting for Marketing Specialist. Randy Rossman said he did not have to post positions; he said he has the right to make staff decisions and Plaintiff needed to know her place.

44. On August 3, 2017, Plaintiff met with Employee Association President Jason Kulongowski, Acting Director Michael Reese and Deputy Director Dave Kirbach, about her complaints.

45. On August 31, 2017, Employee Association President Jason Kulongowski made a joke to another staff member, "I don't like your work, and I'm filing a grievance." He didn't realize Plaintiff was in the room too; when he looked over and saw Plaintiff, he left the room quickly; Plaintiff was the only one who had filed a grievance recently.

46. On September 14, 2017, at the Lake Erie board meeting, Plaintiff sat at the same table as Employee Association President Jason Kulongowski, when he got up to go he told Plaintiff that a new director may not need a "Multimedia Design Supervisor", Plaintiff felt singled out and threatened.

47. On November 3, 2017, Plaintiff met with the Acting Director, Deputy Director, and Employee Association President. The Acting Director asked Plaintiff if she was recording the conversation. He said he would take the notes from the meeting and give her the minutes, the Acting Director asked Plaintiff to withdraw her EEOC complaint to help the Deputy Director get the open Director job. Plaintiff refused.

48. On December 1, 2017, Acting Director Michael Reese yelled at Plaintiff loudly and several co-workers overheard it; He demanded Plaintiff misspell a word, Plaintiff asked not to have to misspell a word on purpose; he yelled loudly, "oh so you're not going to do what I want," and grabbed the papers and left the room. He yelled at Plaintiff in the hallway. Plaintiff went to pick up the printed brochures in the lobby, he came out into the lobby and demanded Plaintiff follow him, he then had

9

> Plaintiff meet with his secretary and the Deputy Director; after his secretary left he started yelling at Plaintiff again. He said Plaintiff had to do whatever he said, and that Plaintiff couldn't talk and began to yell at Plaintiff again. He said if he wanted to misspell a word then that was on him.

49. On December 6, 2017, the Deputy Director asked if Plaintiff would like to report to him instead of Acting Director Michael Reese.

50. On January 9, 2018, after preparing to return to work after an illness, Acting Director Michael Reese informed Plaintiff that she had to provide a doctor's note to return to work because she was ill for 3 days, however, Plaintiff was not out from work for 3 consecutive days; they were January 5, January 8, and January 9. The policy clearly provided that <u>3 consecutive days</u> required a note; when confronted with the fact that Reese was not uniformly applying company policy, Reese stated that Plaintiff had no other choice if she were to return to work.

51. On June 14, 2018, Plaintiff was placed on administrative leave for 14 business days.

52. On July 2, 2018, Plaintiff attempted to return to work at the conclusion of her leave but was informed that, prior to being allowed to return to work, she would have to see the company psychologist, Dr. Linda Forsberg.

53. On July 5, 2018, Plaintiff's administrative leave was extended.

54. On July 24, 2018, Plaintiff was notified via email that her administrative leave was extended on the recommendation of Dr. Forsberg.

55. On August 30, 2018, Plaintiff's paid administrative leave ended.

56. Plaintiff requested a severance package on September 7, 2018.

57. Plaintiff's medical insurance and other benefits have been terminated as of April 30, 2019. However, although Plaintiff has been advised she has been terminated, Plaintiff has not yet received a termination of employment letter from the Huron Clinton Metropolitan Authority.

58. As a result of Defendant Phifer's sexual harassment, and the hostile work environment created by Defendant Huron Clinton against Plaintiff, Plaintiff incurred the following economic and non-economic damages including but not limited to lost wages, including medical insurance and other benefits, as well as panic attacks, and anxiety so severe she has not yet returned to work.

*Injuries and Damages:*

59. As a result of Defendant Phifer's sexual harassment, and the hostile work environment created by Defendant Huron Clinton against Plaintiff, Plaintiff has incurred the following damages, including but not limited to, lost wages, lost benefits, unpaid medical, psychological, and psychiatric bills, emotional distress, upset, humiliation, pain and suffering, fright, anxiety, loss of personhood and civil rights.

## COUNT I – Violations of 42 U.S.C. $2000 e-2 *et seq.*

60. Plaintiff repeats and realleges paragraphs 1-58 as set forth above.
61. There is no dispute, that as a female, Plaintiff is a member of a protected class.
62. Plaintiff was subjected to unwelcome sexual conduct or communication from Defendant Phifer, including by not limited to physical touching, comments, phone calls, and requests for private lunches.

63. Plaintiff was concerned that she would be unable to report Defendant Phifer's behavior for fear of retaliation.

64. When Plaintiff did report the situation to the EEOC, her work environment immediately became hostile.

65. Plaintiff was subject of jokes, comments, and outright hostility from her supervisors at the Huron Clinton Metropolitan Authority.

66. The conduct occurred solely because Plaintiff is an attractive young woman.

67. The terms and conditions of Plaintiff's employment changed as a result of Plaintiff's report to the EEOC, Acting Director Michael Reese, changed company policy to require Plaintiff to have a doctor's note to return to work after a non-consecutive three day absence, which was not policy applied to other employees.

68. Plaintiff was placed on administrative leave, and was not allowed to return to work at the Huron Clinton Metropolitan Authority.

69. Though Plaintiff has been advised she has been terminated, Plaintiff has not yet received a termination of employment letter from the Huron Clinton Metropolitan Authority.

70. As a result of Defendant Phifer's sexual harassment, and the hostile work environment created by Defendant Huron Clinton against Plaintiff, Plaintiff incurred the following economic and non-economic damages including but not limited to lost wages, including medical insurance and other benefits, as well as panic attacks, and anxiety so severe she has not yet returned to work.

WHERFORE, Plaintiff respectfully requests that this Honorable Court enter a judgment in excess of $75,000.00, plus costs and attorney fees so wrongfully sustained in the prosecution of this matter.

<u>COUNT II – Violations of 2 U.S.C. §1311</u>

71. Plaintiff repeats and realleges paragraphs 1-69 as set forth above.

72. There is no dispute, that as a female, Plaintiff is a member of a protected class.

73. After she reported Defendant Phifer to the EEOC, Plaintiff's work environment at the Huron Clinton Metropolitan Authority became immediately hostile.

74. Though Plaintiff has not received a termination of employment letter from Defendant Huron Clinton, she has been advised that she has been terminated.

75. The conduct occurred solely because Plaintiff is an attractive young woman.

76. As a result of Defendant Phifer's sexual harassment, and the hostile work environment created by Defendant Huron Clinton against Plaintiff, Plaintiff incurred the following economic and non-economic damages including but not limited to lost wages, including medical insurance and other benefits, as well as panic attacks, and anxiety so severe she has not yet returned to work.

WHERFORE, Plaintiff respectfully requests that this Honorable Court enter a judgment in excess of $75,000.00, plus costs and attorney fees so wrongfully sustained in the prosecution of this matter.

<u>COUNT III – Violation of the Michigan Elliot Larsen Civil Rights Act M.C.L. § 37.2101 *et seq*. ("ELCRA").</u>

77. Plaintiff repeats and realleges paragraphs 1-75 as set forth above.

78. There is no dispute, that as a female, Plaintiff is a member of a protected class.

79. Plaintiff was repeatedly subjected to comments and gestures regarding her physical appearance from Defendant Phifer.

80. These comments and gestures made Plaintiff feel uncomfortable.

81. Plaintiff had no interest in pursuing a sexual relationship with Defendant Phifer.

82. Plaintiff was uncomfortable during meetings with Defendant Phifer because he kept the office doors locked during these meetings.

83. Plaintiff felt that during a lunch at Applebees it was apparent that Defendant Phifer was "trying to make a pass" at her.

84. Plaintiff was concerned about reporting Defendant Phifer's behavior due to fear of retaliation.

85. When Plaintiff did report the behavior to the EEOC, she was subjected to a hostile work environment.

86. Plaintiff was subject of jokes, comments, and outright hostility from her supervisors at the Huron Clinton Metropolitan Authority.

87. Plaintiff was placed on administrative leave, and was not allowed to return to work at the Huron Clinton Metropolitan Authority.

88. Though Plaintiff has been advised she has been terminated, Plaintiff has not yet received a termination of employment letter from the Huron Clinton Metropolitan Authority.

89. As a result of Defendant Phifer's sexual harassment, and the hostile work environment created by Defendant Huron Clinton against Plaintiff, Plaintiff incurred the following economic and non-economic damages including but not limited to lost wages, including medical insurance and other benefits, as well as panic attacks, and anxiety so severe she has not yet returned to work.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter a judgment in excess of $75,000.00, plus costs and attorney fees so wrongfully sustained in the prosecution of this matter.

## COUNT IV – RETALIATORY DISCHARGE – against Defendant Huron Clinton –ONLY

90. Plaintiff repeats and realleges paragraphs 1-75 as set forth above.

91. Plaintiff was terminated in retaliation for filing a claim with the EEOC and attempting to assert her right under the ELCRA.

92. In addition, upon information and belief, Plaintiff reported suspicions of financial wrongdoing to the Wayne County Prosecutor, which may have contributed to Plaintiff's adverse employment action.

93. Such actions by Defendant Huron Clinton were in direct contravention of the ELCRA and Title VII.

WHERFORE, Plaintiff respectfully requests that this Honorable Court enter a judgment in excess of $75,000.00, plus costs and attorney fees so wrongfully sustained in the prosecution of this matter.

Respectfully submitted,

RAFTERY & BARRON, P.C.

/s/Jeanne V. Barron
JEANNE V. BARRON (P37138)
Attorney for Defendant
32901 Middlebelt Road, Suite 500
Farmington Hills, Michigan 48334
(248) 538-2400

## JURY DEMAND

NOW COMES, the Plaintiff, CARLA M. MCAFEE, by and through her attorneys, RAFTERY & BARRON P.C., and hereby demands a trial by jury in the above cause of action.

                                                Respectfully submitted,

                                                RAFTERY & BARRON, P.C.

                                                <u>/s/Jeanne V. Barron</u>
                                                JEANNE V. BARRON (P37138)
                                                Attorney for Defendant
                                                32901 Middlebelt Road, Suite 500
                                                Farmington Hills, Michigan 48334
Dated: October 9, 2019                                  (248) 538-2400