UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **CARLA M. MCAFEE**, <br><br> Plaintiff, <br><br> vs. <br><br> **GEORGE PHIFER, HURON CLINTON METROPOLITAN AUTHORITY**, <br><br> Defendants. | 2:19-CV-12956-TGB <br><br> **ORDER GRANTING DEFENDANT HURON CLINTON'S MOTION TO DISMISS (ECF NO. 11) AND GRANTING DEFENDANT PHIFER'S MOTION FOR JUDGMENT ON THE PLEADINGS (ECF NO. 18)** |

## I.    Introduction

Plaintiff Carla M. McAfee brings this lawsuit claiming that her employer, Huron Clinton Metropolitan Authority ("Huron Clinton") as well as by her immediate supervisor Acting Director George Phifer, discriminated against her on the basis of her sex, subjecting her to a hostile work environment, quid pro quo sexual discrimination, and retaliation. Plaintiff raises claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e (Count I – against Huron Clinton only)[1], and the Elliott-Larsen Civil Rights Act ("ELCRA"), Mich. Comp. Laws §

---

[1] Count I was originally alleged against both Defendants, but Plaintiff concedes that it may only be brought against Huron Clinton as her employer, so it will be voluntarily dismissed as against Phifer.

1

37.2202 (Count III – against both Defendants), as well as retaliation under Title VII (Count IV – against Huron Clinton only).[2]

Defendant Huron Clinton has moved to dismiss two of the three remaining counts in the complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (ECF No. 11). Defendant George Phifer moves for judgment on the pleadings pursuant to Rule 12(c). For the reasons stated herein, the Court will **GRANT** Defendant Huron Clinton's partial motion to dismiss as to Counts I and III because Plaintiff has failed to allege facts sufficient to show that she suffered from a hostile work environment or quid pro quo sexual harassment. These claims will be **DISMISSED WITHOUT PREJUDICE.** Likewise, the Court will **GRANT** Defendant Phifer's motion for judgment on the pleadings as to Count III. This claim will also be **DISMISSED WITHOUT PREJUDICE**. Finally, the Court accepts Plaintiff's stipulation to dismiss Plaintiff's Count II in its entirety and Count I as to Defendant Phifer. Plaintiff is directed to file a stipulated order to this effect within seven (7) days of the entry of this Order. ECF No. 21, PageID.208; ECF No. 22, PageID.230. Moreover, because the other claims are being dismissed without prejudice, and Plaintiff has expressed the intention to seek leave to file an amended complaint, Plaintiff shall submit a motion for leave to amend, with a proposed

---

[2] Plaintiff also alleged violations of 2 U.S.C. §1311 in the complaint as Count II, but now agrees to voluntarily dismiss that count.

amended complaint attached to the motion, within 30 days of the date of this Order.

## II.    Background

Plaintiff began working for Huron Clinton, a regional special park district, in February of 2016, as a Multimedia Graphic Design Specialist in the Administrative Office. Defendant George Phifer was Plaintiff's immediate supervisor and served as Huron Clinton's director for a period of time. On February 29, 2016, Plaintiff alleges she was called to Defendant Phifer's office, given a pay raise and told that he wanted "to see if she was management material." Plaintiff claims this was on her first day of work. On March 10, 2016, Plaintiff claims Defendant Phifer called her into his office to talk about what Plaintiff was wearing, a black dress and a blazer. Plaintiff alleges that he said he liked what Plaintiff was wearing and made an "ok" sign with his hands, which made Plaintiff uncomfortable. In March of 2016, Plaintiff claims Defendant Phifer would ask her to meet with him in his office, with the door locked, which made Plaintiff uncomfortable. Defendant Phifer also asked Plaintiff to have two phones in case there was ever an "investigation;" the complaint does not indicate whether Plaintiff ever asked Phifer what he meant by "an  investigation," or whether he ever elaborated on why having two cell phones would be necessary in case one took place. Complaint, ECF No. 1, PageID.5-.6.

On April 7, 2016 Defendant Phifer promoted Plaintiff to Multimedia Design Supervisor, approximately two months after she began working. ECF No. 1, PageID.4. Also, in April of 2016, Plaintiff alleges that Defendant Phifer invited her to lunch. Plaintiff alleges that she was uncomfortable because Defendant Phifer had asked her to leave 15 minutes after he did so no one would know they were having lunch together. At lunch, Plaintiff alleges she felt uncomfortable because it was apparent Defendant Phifer was trying to "make a pass at her." The Complaint does not detail what Phifer said or did that caused Plaintiff to believe he was making a pass at her. But when Plaintiff began to speak about her husband and church, Defendant Phifer abruptly announced that he had to leave and left immediately. In May of 2016, Defendant Phifer told Plaintiff's co-workers that she was not to eat lunch with them anymore because she was a supervisor. Also, at this time, the Complaint alleges that Phifer began calling Plaintiff's desk phone during lunch to verify that she was at work. Plaintiff alleges that she became concerned because she did not feel she could report Defendant Phifer's behavior without him knowing, and that he might retaliate against her. ECF No. 1, Page.6.

On April 11, 2017, at the Go Ape Grand Opening at Stony Creek Metropark, Plaintiff claims Defendant Phifer tried to touch her arm and back. Plaintiff stepped away and got really nervous. In her response briefs, Plaintiff changes this allegation to state that Phifer actually

touched her, but this materially different and specific allegation is not contained in the complaint itself. ECF No. 21, PageID.210. Plaintiff alleges that she was concerned that Phifer would again try to sexually harass her and she was worried that he wanted sexual favors in exchange for having taken Plaintiff off probation.[3] On June 8, 2017, at a board meeting during lunch, Defendant Phifer said to Plaintiff, "Plaintiff needed to eat because she's a growing girl." Plaintiff claims he looked her body up and down and made an "ok" gesture with his hands. Phifer then said that it was ok for her to eat because, "she looks good." ECF No. 1, PageID.7. Plaintiff was embarrassed and emotionally distraught because this comment was made in front of other staff. Plaintiff claims she never observed Phifer treat a female employee in this way.

On June 21, 2017, Defendant Phifer was put on paid administrative leave pending an internal investigation. Shortly after being put on leave, on July 18, 2017, Plaintiff received a missed call from a restricted number; she later found out the call was from Defendant Phifer. On July 25, 2017, Defendant Phifer again called Plaintiff from the same restricted number. Again, in her response briefs, Plaintiff provides relevant details of the statements Phifer allegedly made to her during this conversation,

---

[3] Defendant Huron Clinton's motion claims that Plaintiff was placed on a probationary period for a year for a variety of performance-related issues and that the probationary period was governed by the terms of a collective bargaining agreement to which all union members, including Plaintiff, were bound. ECF No. 11, PageID.96. Plaintiff's probationary status was removed in February 2017. ECF No. 1, PageID.7.

but these facts are not alleged in the complaint. ECF No. 21, PageID.212. Plaintiff claims she felt threatened and called CFO Michelle Cole and Commissioner Marans to let them know. ECF No. 1, PageID.8. On July 26, 2017, Plaintiff received a phone call from HR Manager Randy Rossman. Plaintiff claims she inquired about the removal of the posting for Marketing Specialist and Randy Rossman stated he did not have to post positions; he said he had the right to make staff decisions and Plaintiff needed to know her place. *Id.*

On August 3, 2017, Plaintiff met with Employee Association President Jason Kulongowski, Acting Director Michael Reese, and Deputy Director Dave Kirbach, about her complaints. ECF No. 1, PageID.9. Plaintiff alleges that Defendant Huron Clinton was well aware that Plaintiff's complaints were not the first time anyone complained about George Phifer sexually harassing them. Plaintiff also alleges that complaints about Phifer went back to 2010, with no corrective action taken until August 14, 2017 when Phifer resigned and Michael Reese became acting director. ECF No. 1, PageID.8. On August 31, 2017, Plaintiff claims Employee Association President Jason Kulongowski made a joke to another staff member, "I don't like your work, and I'm filing a grievance." He didn't realize Plaintiff was in the room too; when he looked over and saw Plaintiff, he left the room quickly. Plaintiff alleges she was the only one who had filed a grievance recently. ECF No. 1, PageID.9.

On September 14, 2017, at the Lake Erie board meeting, Plaintiff sat at the same table as Kulongowski. Plaintiff alleges when he got up to go, he told Plaintiff that a new director may not need a "Multimedia Design Supervisor." Plaintiff felt singled out and threatened. *Id.* On October 13, 2017, Plaintiff informed Defendant Huron Clinton that she would be going to the EEOC. ECF No. 1, PageID.8. On November 3, 2017, Plaintiff met with the Acting Director, Deputy Director, and Employee Association President. Plaintiff claims the Acting Director asked her if she was recording the conversation. He said he would take notes from the meeting and give her the minutes. Plaintiff claims the Acting Director asked Plaintiff to withdraw her EEOC complaint to help the Deputy Director get the open Director job. Plaintiff refused. ECF No. 1, PageID.9.

On December 1, 2017, Plaintiff alleges that Acting Director Michael Reese yelled at Plaintiff loudly and several co-workers overheard it. Plaintiff claims he demanded she misspell a word. Plaintiff asked not to have to misspell a word on purpose. He yelled loudly, "oh so you're not going to do what I want," and grabbed the papers and left the room. Plaintiff claims he yelled at her in the hallway. Plaintiff went to pick up the printed brochures in the lobby. He came out into the lobby and demanded Plaintiff follow him. He then had Plaintiff meet with his secretary and the Deputy Director. After his secretary left, he started yelling at Plaintiff again. Plaintiff claims he said she had to do whatever he said and that she couldn't talk. He said if he wanted to misspell a word

then that was on him. On December 6, 2017, the Deputy Director asked Plaintiff if she would like to report to him instead of Acting Director Michael Reese. ECF No. 1, PageID.9-.10.

On January 9, 2018, after preparing to return to work after an illness, Acting Director Michael Reese informed Plaintiff that she had to provide a doctor's note to return to work because she was ill for 3 days. However, Plaintiff claims she was not out for three consecutive days. She was out January 5, 8, and 9 (a Friday, Monday and Tuesday). The policy clearly provided that three consecutive days required a note. Plaintiff alleges when she confronted Reese about failing to uniformly apply company policy, Reese stated that Plaintiff had no other choice if she wanted to return to work. ECF No. 1, PageID.10.

Six months later, on June 14, 2018, Plaintiff was placed on administrative leave for 14 business days. On July 2, 2018, Plaintiff claims she attempted to return to work at the conclusion of her leave but was informed that she would have to see the company psychologist, Dr. Linda Forsberg. On July 5, 2018, Plaintiff's administrative leave was extended. On July 24, 2018, Plaintiff alleges she was notified via email that her administrative leave was extended on the recommendation of Dr. Forsberg. On August 20, 2018, Plaintiff's paid administrative leave ended. On September 7, 2018, Plaintiff alleges she requested a severance package. ECF No. 1, PageID.10. Plaintiff's medical insurance and other benefits have been terminated as of April 30, 2019. Plaintiff claims

8

although she has been advised that she has been terminated, she had not yet received an official termination letter. ECF No. 1, PageID.11.[4]

Thereafter, Plaintiff filed the instant lawsuit alleging quid pro quo sexual harassment and a sexually hostile work environment in violation of Title VII and the ELCRA, as well as retaliation under Title VII. Plaintiff also alleges violations of 2 U.S.C. §1311. Now before the Court is Defendant Huron Clinton's partial motion to dismiss Plaintiff's complaint for failure to state a claim pursuant to Rule 12(b)(6) (ECF No. 11.) and Defendant George Phifer's motion for judgment on the pleadings (ECF No. 18).

## III.   Legal Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes courts to dismiss a lawsuit if they determine that the plaintiff has "fail[ed] to state a claim upon which relief can be granted."[5] In evaluating a motion to dismiss under Rule 12(b)(6), courts must construe the complaint in the light most favorable to the plaintiff and accept all well-pled factual allegations as true. *League of United Latin Am. Citizens v. Bredesen*, 500

---

[4] Plaintiff's responses to Defendants motions include a number of additional allegations that cannot be considered by the Court for purposes of determining the sufficiency of Plaintiff's complaint. *Miller v. The Bank of New York Mellon*, No. 19-12826, 2020 WL 475324, at *4 (E.D. Mich. Jan. 29, 2020) ('[A] motion to dismiss focuses solely on the facts alleged in the complaint and not evidence provided in . . . Plaintiff's response."); *see also* ECF Nos. 21-22.

[5] Courts apply the same standard in evaluating a Rule 12(c) motion for judgment on the pleadings as the standard applied to evaluate a Rule 12(b)(6) motion to dismiss. *Ziegler v. IBP Hog Mkt., Inc.,* 249 F.3d 509, 511-12 (6th Cir. 2001). Defendant Phifer has filed a Rule 12(c) motion for judgement on the pleadings. ECF No. 18.

F.3d 523, 527 (6th Cir. 2007) (citing *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006)).

Although Rule 8(a) requires only that pleadings contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), plaintiffs must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" in support of their claims. *Albrecht v. Treon*, 617 F.3d 890, 893 (6th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007)). The federal pleading standards also apply to state law claims removed to federal court. *See Beer v. Nationstar Mortg. Holdings, Inc.*, No. 14-CV-13365, 2015 WL 13037309, at *3 (E.D. Mich. July 15, 2015) (citing *Armstrong v. Shirvell*, 596 Fed. Appx. 433, 459 (6th Cir. 2015)).

## IV.   Discussion

### A.   Plaintiff's claims of hostile work environment and quid pro quo sexual harassment under Title VII and the ELCRA.

Case law recognizes two types of sexual harassment: 1) harassment that creates an offensive or hostile environment; and 2) quid pro quo harassment, in which a supervisor demands sexual favors as a condition for job benefits. *Kauffman v. Allied Signal, Inc., Autolite Div.*, 970 F.2d 178, 182 (6th Cir. 1992). Plaintiff brings hostile work environment and quid pro quo claims against both Phifer and Huron Clinton.

### i.   Hostile Work Environment

To establish a *prima facie* case of hostile work environment based on sex under Title VII, an employee must demonstrate that (1) she was a member of a protected class; (2) she was subjected to unwelcome sexual harassment; (3) the harassment was based on her sex; (4) the harassment created a hostile work environment; and (5) the employer failed to take reasonable care to prevent and correct any sexually harassing behavior. *Bowman v. Shawnee State Univ..,* 220 F.3d 456, 462-63-61 (6th Cir. 2000). A hostile work environment occurs "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys. Inc.*, 510 U.S. 17, 21 (1993).[6] "In *Burlington Northern Santa Fe Ry. Co. v. White*, the Supreme Court distinguished material adversity from 'trivial harms.'" *Bradley v. Arwood*, No. 14-12303, 2014 WL 5350833, at *16 (E.D. Mich. Oct. 20, 2014) (quoting *Burlington*, 548 U.S. 53, 68 (1993)). The key to the test is whether or not the alleged

---

[6] Plaintiff cites *Swierkiewicz v. Sorema,* 534 U.S. 506, 510 (2002) and *Keys v. Humana, Inc.,* 684 F.3d 605, 609 (6th Cir. 2012) for the proposition that she need not allege a *prima facie* claim of hostile work environment and quid pro quo sexual harassment. While that appears to be the case, the court notes that the *McDonnell Douglas* factors apply to claims of sex-based, race-based, and religion-based discrimination is not applied in the hostile work environment or quid pro quo context. *See Keys v. Humana, Inc.*, 2013 WL 5740109, at *4 (W.D. Ky. Oct. 22, 2013); *Harris-Bethea v. Babcock & Wilcox Tech. Servs. Y-12, LLC*, 2015 WL 1458042, at *12 (E.D. Tenn. Mar. 30, 2015); *Primm v. Dep't of Human Servs.*, No. 16-6837, 2017 WL 10646487, at *2 (6th Cir. Aug. 17, 2017).

harassment is severe or pervasive. And Plaintiff's claims are evaluated both objectively and subjectively: "[t]he conduct must be severe or pervasive enough that a reasonable person would find [it] hostile or abusive, and the victim must subjectively regard that environment as abusive." *Jackson v. Quanex Corp.*, 191 F.3d 647, 658 (6th Cir. 1999) (quoting *Black v. Zaring Homes Inc.*, 104 F.3d 822, 826 (6th Cir. 1997)).

"However, the harassment need not be so extreme that it produces tangible effects on job performance or psychological well-being to be actionable. Instead, there merely must be proof of some mental distress." *Bradley*, 2014 WL 5350833, at *16 (citing *Harris*, 510 U.S. at 22); *Moore v. KUKA Welding Sys. & Robot Corp.*, 171 F.3d 1073, 1082 (6th Cir. 1999). The Supreme Court urges courts not to apply a "mathematically precise test," *Harris*, 510 U.S. at 22, and the Sixth Circuit applies a non-exhaustive list of factors to consider: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Jordan v. City of Cleveland*, 464 F.3d 584, 597 (6th Cir. 2006) (quoting *Harris*, 510 U.S. at 23). "The ELCRA hostile work environment analysis is identical to Title VII's analysis." *Wasek v. Arrow Energy Servs.*, 682 F.3d 463, 468 (6th Cir. 2012). "Like Title VII, ELCRA prohibits employment discrimination 'with respect to a term' or 'condition . . . of employment, because of . . .

sex.'" *Id.* (quoting M.C.L. § 37.2202(1)(a)).[7] When Title VII and ELCRA have similarly worded provisions, Michigan courts often interpret ELCRA provisions using Title VII case law. See *Pena v. Ingham Cnty. Road Comm'n,* 660 N.W.2d 351, 358 n.3 (Mich. Ct. App. 2003).

While Plaintiff does not have to plead a prima facie case to survive dismissal,  she must "produce 'sufficient factual content from which a court, informed by its judicial experience and common sense, could draw the reasonable inference' that her work environment was both *objectively* and *subjectively* hostile due to sexually . . . charged harassment." *Keys v. Humana, Inc.*, No. 3:09-CV-00834, 2013 WL 5740109, at *5 (W.D. Ky. Oct. 22, 2013) (quoting *Keys v. Humana, Inc.*, 684 F.3d 605, 610 (6th Cir. 2012)). In turn, she must produce sufficient factual content from which a court could draw the reasonable inference that the conduct was "severe or pervasive enough that a reasonable person would find [it] hostile or abusive," and that Plaintiff herself  "subjectively regard[ed] that environment as abusive." *Jackson*, 191 F.3d at 658. This standard does not displace, nor does it create an exception to *Twombly*'s pleading

---

[7] As for Defendant Phifer's individual liability, "an agent who sexually harasses an employee in the workplace can be held individually liable under the [EL]CRA." *Elezovic v. Bennett*, No. 267747, 274 Mich. Ct. App. 1, 4, 731 N.W.2d 452 (2007) (citing *Elezovic v. Ford Motor Co.*, 472 Mich. 408, 411, 697 N.W.2d 851 (2005)). Plaintiff's complaint alleges that Defendant Phifer was both her "immediate supervisor" and Defendant Huron Clinton's "Director." ECF No. 1, PageID.8. Here, Defendant Phifer does not dispute for purposes of this motion that he is an "agent" under the ELCRA. *See generally* ECF No. 18.

standard. *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 614 (6th Cir. 2012).

McAfee's Complaint describes the following events that are relevant to her hostile work environment claims:

- On her first day of work, Phifer gave Plaintiff a pay raise and said that he wanted to see if she was "management material." ECF No. 1, PageID.5.

- On March 10, 2016, Phifer called Plaintiff into his office to comment on what she was wearing—a black dress and blazer—and made an "ok" sign with his hands. *Id.*

- Throughout March 2016, Phifer called Plaintiff into private meetings where he locked the door, where Plaintiff states she felt uncomfortable. *Id.*

- At an unspecified time, Phifer told Plaintiff to have two phones "in case there was ever an investigation." *Id.*

- In April 2016, Phifer took Plaintiff to a private lunch, where Plaintiff was uncomfortable and believed Phifer was trying to "make a pass at her." When Plaintiff began discussing her husband and inferring that she had no interest in a relationship with Phifer, she alleges Phifer abruptly left the lunch. *Id.* at PageID.6.

- In May 2016, Phifer told Plaintiff's co-workers not to eat lunch with Plaintiff because she was a supervisor. Plaintiff states that Phifer

began calling her work phone during her lunch hour to verify that she was at work. *Id.*

- On unspecified dates after Plaintiff rejected Phifer at the private lunch, Phifer began calling Plaintiff to check up on her, yelling at and berating her, calling her after work and on weekends early in the morning. *Id.* Phifer also refused to allow Plaintiff to attend training that was allegedly necessary for her improvement on the job and thwarting her ability to supervise the employees under her direction. *Id.*

- In October 2016, Phifer extended Plaintiff's probationary period for another year, even though Plaintiff had no prior notice of any threatened disciplinary activity. *Id.* at PageID.7.

- When that extended probationary period was allegedly removed in February 2017, Plaintiff alleges Phifer's sexual harassment began again with an obvious attempt to make Plaintiff feel that cooperating with his sexual overtones controlled her ability to have a job and be successful. *Id.*

- On April 11, 2017, while at a grand opening event, Phifer "*tried to touch Plaintiff's arm and back.*" *Id.*(emphasis added). Plaintiff got nervous and stepped back and was concerned that Phifer wanted sexual favors in exchange for taking Plaintiff off of probation. *Id.*

- On June 8, 2017, at a board meeting during lunch, Phifer told Plaintiff that she "needed to eat because she's a growing girl." *Id.*

Phifer looked her body up and down, made an "ok" gesture with his hands, and said it was okay for her to eat because "she looks good." *Id.* Plaintiff said she was "embarrassed and emotionally distraught" because other staff at the board meeting heard it. *Id.*

- On June 21, 2017, Phifer was placed on paid administrative leave pending an internal investigation. *Id.* at PageID.8. Approximately one month later, on July 18, 2017, Plaintiff received a missed call from a restricted number that she later learned belonged to Phifer. *Id.* Plaintiff received another call from the same number on July 25, 2017. Plaintiff alleges she felt "threatened" by these calls and immediately called Huron Clinton's CFO and Commissioner to tell them that Phifer had just called her. *Id.*

- On July 25, 2017, Plaintiff alleges she "was informed that her position had been demoted," *Id.* at PageID.4 but does not explain whether her position, title, or salary changed. Rather, at a different point in her complaint, Plaintiff alleges that on the following day— July 26, 2017—she received a phone call from HR Manager Randy Rossman. *Id.* at PageID.8. She inquired about the removal of the posting for Marketing Specialist and Rossman told her that he had the right to make staffing decision and Plaintiff needed to know her place. *Id.*

- Plaintiff alleges that complaints about Phifer go back to at least 2010, and that Huron Clinton failed to take any corrective action until August 14, 2017, when Phifer resigned as acting director.

Plaintiff also relies on events that occurred after Phifer resigned from Huron Clinton. *See id.* at PageID.8-11. Interpreting these allegations in the light most favorable to Plaintiff, they are more relevant to Plaintiff's Title VII retaliation against Huron Valley (Count IV), than specific events creating a hostile work environment due to sexually charged harassment. None of the allegations occurring after August 14, 2017 have any inference of sexually harassing conduct, but instead suggest or explicitly allege retaliation against Plaintiff for filing a grievance against Phifer and reporting Phifer's activity to the EEOC. ECF No. 1, PageID.8-11. *See also Wasek v. Arrow Energy Servs.*, 682 F.3d 463, 467 (6th Cir. 2012) ("[T]he conduct of jerks, bullies, and persecutors is simply not actionable under Title VII unless they are acting because of the victim's [protected status].").

Returning to the allegations of sexual harassment, Plaintiff alleges sexual harassment occurring over a span of approximately 17 months, from February 2016 when she was hired until August 2017, when Phifer resigned as Director.[8] This is not an insignificant period of time. And

---

[8] Again, Plaintiff references allegations of harassment by other Huron Clinton employees after Phifer resigned. But none of these allegations are sexual in nature, and instead go to Plaintiff's retaliation claim which is not challenged by the motions currently before the Court.

Plaintiff has also alleged that the hostility and harassment affected her ability to perform her job. *Gallagher v. C.H. Robinson Worldwide, Inc.*, 567 F.3d 263, 274 (6th Cir. 2009) (explaining what while "a plaintiff need not prove a tangible decline in her work productivity," she must demonstrate "that the harassment made it more difficult to do the job"); *see also Keys v. Humana, Inc.*, No. 3:09-CV-00834, 2013 WL 5740109, at *5 (W.D. Ky. Oct. 22, 2013).  Specifically, she claims that Phifer refused to allow her to attend important trainings for her job and thwarted her abilities to supervise the employees working underneath her. ECF No. 1, PageID.7, ¶ 35. But the Court must also consider the severity of the conduct, and whether it was physically threatening or humiliating or rather a mere offensive utterance. *Jordan v. City of Cleveland*, 464 F.3d 584, 597 (6th Cir. 2006).

Reviewing the allegations in the complaint in their totality, the factual allegations lack specificity in several instances that are directly relevant to the question of whether her work environment was both *objectively* and *subjectively* hostile due to sexually charged harassment. The allegations, taken as true, make a plausible case that Plaintiff was subjected to unwelcome sexual conduct or communication. Plaintiff indicated in her complaint that she felt uncomfortable in the situations with Defendant Phifer and moved away and got nervous when he tried to touch her. ECF No. 1, PageID.6-.7. This indicates that the communication and contact were subjectively unwelcome. But the

totality of Plaintiff's allegations must also rise to the level of severe or pervasive atmosphere of harassment from the objective perspective of a reasonable person. *Harris*, 510 U.S. at 21. And in meeting this standard, the facts alleged in the complaint lack specificity.

In *White v. Coventry Health and Life Insurance Company*, the Sixth Circuit affirmed the district court's dismissal of a plaintiff's race and sex discrimination claim under the Kentucky Civil Rights Act.[9] 680 Fed. Appx. 410, 414-16 (6th Cir. 2017). The plaintiff, a native Hawaiian woman in her fifties, worked as a network operations manager for an insurance company. *Id.* at 412. She alleged that she received chastising emails that younger, male, and non-minority employees did not receive for failing to attend a meeting, that she received complaints for things that she was not involved in, and for having perfume that was too strong. *Id.* She also alleged that the vice president counseled her that if she wanted to apply for a different position, she should do it before being written up for "not living up to expectations," and that when she asked why the company did not fire her, the vice president responded that the company was "afraid of being sued by someone that is over 50, a minority, and a female." *Id.* Later, the plaintiff alleged that she applied for a new position but never received any response about the position; she spoke

---

[9] Courts apply Title VII precedent when analyzing claims of discrimination under the KCRA. *White*, 680 Fed. Appx. at 414 (citing *Pedreira v. Ky. Baptist Homes for Children, Inc.*, 579 F.3d 722, 727 (6th Cir. 2009)).

with other employees and was told there were no qualified candidates, even though she had significant experience. *Id.* Around the same time, the plaintiff received a new supervisor who allegedly did not understand the "ins and outs" of her department and she alleged that this resulted in her being accused of not knowing her job and receiving constant harassment by her supervisors. *Id.* She also alleged that a co-worker cursed at her repeatedly during a conference call. *Id.* at 412-13. Additionally, the plaintiff alleged that she attended several mandatory meetings where she was required to give answers to questions for areas of the department her Caucasian male counterpart was responsible for knowing and that he was never reprimanded for missing those meetings. *Id.* at 413. When the plaintiff's supervisor told her that "she had lost her credibility and had an attitude of irresponsibility," the plaintiff was "diagnosed with severe depression stemming from her traumatic work situation" and submitted her letter of resignation. *Id.*

The Sixth Circuit concluded that "none of these events, either independently or in combination, constituted an adverse change in the terms and conditions of her employment. Nor [had] she included facts from which [the court] could infer that the criticism related to her race, sex, or age." *Id.* at 415. The court also held that when the plaintiff posted that "almost from the very beginning of [her] employment she suffered from harassment, discrimination, intimidation, berating and a hostile work environment," and that she was "constantly berated" by a

20

supervisor, as well as "degraded and humiliated," that these allegations were simply "naked assertions" that added nothing to the complaint's sufficiency. *Id.* (citing *Iqbal*, 556 U.S. at 678).

In *Hairston v. Dept' of Veteran Affairs,* No. 115-660, 2015 WL 9304558 at *16 (W.D. Mich. Dec. 21, 2015), Hairston alleged a total of nine incidents involving three individuals that occurred over approximately 14 months in his complaint. *Id.* "All of the incidents were relatively minor and did not affect or interfere with Hairston's ability to do his job." *Id.* The court held that considering the totality of the circumstances, Hairston did not allege that he suffered a hostile work environment to overcome a motion to dismiss. *Id.* Compare that kind of repeated, but "relatively minor" harassment to the allegations presented in *Bradley v. Arwood*, *supra*, 2014 WL 5350833, at *17, where the plaintiff alleged, "she was subjected to repeated admonishment, formal counseling, threats, berating, and belittling, false claims of being absent from her work area, unjustified low performance evaluations, and other actions." *Id.* The court found, looking at the totality of the circumstances, she had presented adequate material facts to sufficiently allege that she was subjected to a hostile work environment. *Id.*

In *Thomas v. Henderson*, albeit on a motion for summary judgment, the district court noted that a plaintiff's allegations that a supervisor "caressed her hand while playing cat-and-mouse with her time card, and that he asked intrusive questions about her perfume, family and personal

problems" fell outside the purview of Title VII. *Thomas v. Henderson*, 44 F. Supp. 2d 915, 925 (E.D. Mich. 1999). However, the court permitted the plaintiff's hostile work environment claim to survive because the plaintiff also alleged that her supervisor touched her leg and inner thigh on three different occasions. *Id.* The court drew a distinction between such repeated unwelcome touching and a less pervasive scenario case where a supervisor "only touched Plaintiff on one occasion, or perhaps even just tapped her on the knee." In the lesser case, the court suggested it might have agreed that such conduct not unreasonable or sexual in nature. *Id.*

Finally, in *Finney v. Arch Realty Co., LLC*, the plaintiff alleged his superior touched him "countless times in a sexually suggestive manner on his arms, legs and sides." No. 10-12395, 2011 WL 5507384, at *1 (E.D. Mich. Nov. 10, 2011). The superior also allegedly made suggestive sexual comments on numerous occasions and showed the plaintiff and two other male employees pornographic photos on his computer. The court concluded that while no single incident was necessarily severe in nature, the plaintiff had clearly alleged that the superior had "engaged in frequent sexual harassment which manifested itself verbally and physically over a period of eighteen months," denying the plaintiff's motion for summary judgment. *Id.* at *4.

Plaintiff relies on *Keys v. Humana, Inc.*, 684 F.3d 605 (6th Cir. 2012), where the Sixth Circuit reversed the district court's dismissal of a Title VII complaint alleging discrimination based on race, holding that it

was error for the district court to require the plaintiff to plead a prima facie case under *McDonnell Douglas* to survive a motion to dismiss. *Id.* at 609. It also held that the plaintiff's complaint alleged facts that could "easily state a plausible claim." *Id.* at 610. The court summarized many of the allegations made in the complaint: that Humana had a practice of discrimination against African American managers and staff in hiring, compensation, promotion, discipline, and termination. *Id.* The complaint also detailed "several specific events in each of those employment-action categories where [the plaintiff] allege[d] she was treated differently than her Caucasian management counterparts; it identifie[d] the key supervisors and other relevant positions by race and either name or company title; and it allege[d] that [the plaintiff] and other African Americans received specific adverse employment actions notwithstanding satisfactory employment performances." *Id.* While *Keys* did not concern a hostile work environment claim, it provided a level of specificity regarding the severity and pervasiveness of the discriminatory conduct not seen here. *Id.*

Upon examining the complaint in this case, and even construing the claims in the light most favorable to Plaintiff, the allegations as currently stated are more akin to *Hairston* and *White*, than *Thomas*, *Finney*, *Bradley*, and *Keys*. Plaintiff alleges instances of being publicly degraded and humiliated, yelled at, called into Phifer's office with the door locked, invited to a private lunch, and made the subject of several

suggestive comments about what outfit she was wearing or that  she "needs to eat because she is a growing girl." her outfit. One allegation states that at a work event, Phifer "tried" to touch Plaintiff on the arm, ECF No. 1, PageID.7, ¶ 36. And there are also claims that Phifer called her after work, on weekends, and on two occasions after Phifer was placed on administrative leave. These alleged actions were not physically threatening or humiliating such as would be considered severe and pervasive under *Harris.* 510 U.S. at 23. These incidents more closely approximate the kind of offensive utterances that the *White* court called "naked assertions that add nothing to the complaint's sufficiency." *White*, 680 Fed. Appx. at 415-16. While Plaintiff alleges that she was subjected to intimidation, ridicule, and mistreatment—none of which was in any way appropriate or excusable as professional workplace behavior—she must allege a pattern of sexual harassment that is objectively severe or pervasive to a reasonable person according to precedent in this circuit in order to make out an actionable complaint. The incidents Plaintiff complained of occurred about once per month and involved suggestive comments, yelling, and what is described as an *attempt* to touch Plaintiff's arm and back. To allege facts sufficient to establish a hostile work environment, more specifics would be needed to show that the frequency and nature of the conduct would have been considered severe and pervasive to a reasonable person. *See also Jordan v. City of Cleveland,* 464 F.3d 584, 598 (6th Cir. 2006) ("For more than a decade

Jordan was consistently subjected to varieties of offensive conduct that were humiliating and degrading to him as well as to African Americans as a class.") *Kalich v. AT&T Mobility, LLC,* 679 F.3d 464, 474 (6th Cir. 2012) ("Except in cases of extreme incidents such as rape or sexual assault, a single, isolated event is typically insufficient to create a hostile work environment.") *Williams v. GMC,* 187 F.3d 553, 559 (6th Cir. 1999) (a series of sexually inappropriate incidences, while offensive and deplorable, were not sufficiently severe or pervasive.)

Here, Plaintiff's complaint speaks frequently of her subjective thoughts and worries that Phifer "might try to sexually harass her" and her belief that "he wanted sexual favors." These allegations speak to her subjective beliefs, but they do not show that Phifer's conduct was objectively severe or pervasive. Again, the Court recognizes that Plaintiff's pleading requirements for a hostile work environment need not rise to the level of proofs required on a motion for summary judgment. But Plaintiff is still obligated to "produce 'sufficient factual content from which a court, informed by its judicial experience and common sense, could draw the reasonable inference' that her work environment was both *objectively* and *subjectively* hostile due to sexually . . . charged harassment." *Keys v. Humana, Inc.*, No. 3:09-CV-00834, 2013 WL 5740109, at \*5. Plaintiff has not done so here. Accordingly, Defendant Huron Clinton's motion to dismiss and Defendant Phifer's motion for judgment on the pleadings as to Plaintiff's hostile work environment

claims will be **GRANTED** and the claim dismissed **WITHOUT PREJUDICE**.

### ii.    Quid Pro Quo

To establish a claim of quid pro quo sexual harassment under Title VII, a plaintiff must demonstrate: 1) that she was a member of a protected class; 2) that she was subjected to unwelcomed sexual harassment in the form of sexual advances or requests for sexual favors; 3) that the harassment complained of was on the basis of sex; 4) that her submission to unwelcomed advances was an express or implied condition for receiving job benefits or that her refusal to submit to her supervisor's sexual demands resulted in tangible job detriment; and 5) existence of respondeat superior liability. *Bowman,* 220 F.3d at 461. "Under Michigan's ELCRA, a *quid pro quo* sexual harassment claim requires proof that (1) an employee was subjected to any of the types of unwelcome sexual conduct or communication described in the statute; and (2) her employer or her employer's agent used her submission to or rejection of the proscribed conduct as a factor in a decision affecting her employment." *Johnson v. Ford Motor Co.*, No. 19-CV-10167, 2019 WL 6649245, at *4 (E.D. Mich. Dec. 6, 2019) (citing M.C.L. § 37.2013(i); *Chambers v. Trettco, Inc.*, 463 Mich. 297, 310 (2000)). "A 'tangible employment action' is an indispensable element' of *quid pro quo* harassment, and only persons with supervisory powers could effectively make such a decision." *Id.* Under the ECLRA, the plaintiff must "allege

that she forfeited job benefits or was otherwise subjected to less favorable working conditions based on her rejection of [the] defendant's alleged sexual invitation." *Rose v. Shatzman & Assoc., P.C.*, No. 204346, 1999 WL 33451609, at *3 (Mich. Ct. App. Mar. 30, 1999). As with hostile work environment, quid pro quo claims under the ELCRA are often interpreted using Title VII case law. See *Pena v. Ingham Cnty. Road Comm'n,* 660 N.W.2d 351, 358 n.3 (Mich. Ct. App. 2003). And a plaintiff is not required to allege a prima facie case at the motion to dismiss stage. *Keys*, 684 F.3d at 609.

> The Sixth Circuit has explained that:
>
> [w]hat is commonly known as *quid pro quo* sexual harassment, to be contrasted with so-called hostile-work-environment sexual harassment, is anchored in an employer's sexually discriminatory behavior which compels an employee to elect between acceding to sexual demands and forfeiting job benefits, continued employment or promotion, or otherwise suffering tangible job detriments. To succeed, a plaintiff must prove, as relevant here, that he or she was "subjected to unwelcome[] sexual harassment in the form of sexual advances or requests for sexual favors" and that submitting to these demands or advances was an express or implied condition for receiving job benefits, or that refusing to submit resulted in a tangible job detriment.

*Souther v. Posen Constr., Inc.*, 523 Fed. Appx. 352, 354 (6th Cir. 2013).

Defendants concede that Plaintiff has adequately alleged she is a member of a protected class and that she was subjected to unwelcomed sexual harassment on the basis of her sex. Because Plaintiff does not allege that she submitted to these unwelcome advances, Plaintiff must

allege that her *refusal to submit* to such advances resulted in a tangible job detriment. Here, Plaintiff alleges that after she rejected Phifer's sexual advances at a private lunch in April 2016, Phifer began taking tangible employment actions against her. ECF No. 21, PageID.223. She alleges that her probationary period was extended for a year in October 2016; it was later removed in February 2017. She does not allege, however, that the temporary probation resulted in any economic or other harm. The placement of a plaintiff on a temporary probationary period does not constitute an adverse employment action under the ELCRA and Title VII because of its temporary nature and because it does not materially impact the plaintiff's employment status, benefits, or responsibilities. *See Shaya v. Belcastro*, No. 14-11112, 2016 WL 335961, at *15 (E.D. Mich. June 10, 2016); *see also Burlington Indus. V. Ellerth,* 524 U.S. 742, 761 (1998) (explaining that a tangible employment action must constitute a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits).[10] Plaintiff also alleges that Phifer told Plaintiff's co-workers not to eat lunch with her, that Phifer began publicly and privately yelling at and berating her, refused to allow her to attend trainings that were

---

[10] "Courts use the terms 'tangible employment detriment' and 'materially adverse employment action' interchangeably." *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 461 n.5 (6th Cir. 2000) (citing *Bryson v. Chicago State Univ.*, 96 F.3d 912, 916 (7th Cir. 1996)).

necessary for her improvement on the job, and took actions to thwart her ability to supervise employees. While the refusal to attend trainings and the efforts to prevent appropriate supervision could result in a tangible job detriment if it caused her not to receive a promotion or to take a pay-cut, Plaintiff does not allege that adverse action resulted from these incidents.

The complaint does make a vague reference to an unspecified "demotion" alleged to have occurred in July 2017. But Plaintiff provides no details that would allow one to know how this "demotion," resulted in a tangible job detriment such as a change of job responsibilities, salary, or benefits, nor does it explicitly or implicitly state that Plaintiff was demoted because she rejected Phifer's sexual advances toward her, or in fact that he had anything to do with the decision to demote her.  This is particularly true because, according to the complaint, Phifer had been placed on administrative leave in June 2017, before the alleged demotion even occurred. Plaintiff does not allege that she was fired or denied promotion after she denied Phifer's sexual advances at the private lunch,[11] she still had the same job responsibilities, and she maintained

---

[11] Plaintiff's response asserts that she was not promoted the Marketing Specialist position and references paragraph 43 of her complaint for support of this assertion. ECF No. 21, PageID.223. But Paragraph 43 states:

> On July 26, 2017, Plaintiff received a phone call from HR Manager Randy Rossman. Plaintiff inquired about the removal of the posting for Marketing Specialist. Randy Rossman said he did not have to post positions; he said he has the right to make staff decisions and Plaintiff needed to know her place.

the same benefits. While Plaintiff was ultimately placed on administrative leave in June 2018 (approximately a year after Phifer resigned), Plaintiff does not allege that this administrative leave was caused by a refusal to submit to Phifer's sexual advances throughout 2016 and 2017. Because Plaintiff did not allege that she suffered a tangible job detriment as a consequence of rejecting Phifer's advances, she fails to allege sexual harassment in the quid pro quo context.

In sum, Plaintiff has failed to allege sufficient facts that she suffered from a hostile work environment or quid pro quo sexual harassment. Therefore, Defendant Huron Clinton's motion as to Counts I and III are **GRANTED** and Defendant Phifer's motion as to Counts I and III are **GRANTED**.[12] These Counts will be **DISMISSED WITHOUT PREJUDICE.**

## V. Conclusion

Accordingly, Defendant Huron Clinton's partial motion to dismiss is **GRANTED** as to Counts I and III because Plaintiff has failed to adequately plead that she suffered from a hostile work environment or

---

ECF No. 1, PageID.8. This does not allege or imply that Plaintiff applied for the Marketing Specialist position or that she was denied the position (after Phifer left Huron Clinton) because she rejected Phifer's sexual advances.

[12] Defendants also move to dismiss Count II, asserting that Plaintiff is not a covered employee under 2 U.S.C. §1311. ECF No. 11, PageID.99; ECF No. 18, PageID.142. Plaintiff stipulates to dismissal of this count, explaining that Plaintiff's complaint was drafted and filed by Plaintiff's prior counsel. ECF No. 21, PageID.208. Similarly, Plaintiff stipulates to dismissal of Count I as to Defendant Phifer because Title VII does not provide for individual supervisory liability. ECF No. 22, PageID.230.

quid pro quo sexual harassment. Counts I and III as to Defendant Huron and Clinton are therefore **DISMISSED WITHOUT PREJUDICE**. Likewise, Defendant Phifer's motion for judgment on the pleadings is **GRANTED** as to Count III. Count III as to Defendant Phifer is **DISMISSED WITHOUT PREJUDICE**. The Court accepts Plaintiff's stipulation to dismiss Plaintiff's Count II in its entirety and Count I as to Defendant Phifer. Plaintiff is **ORDERED** to file a stipulated order to this effect within seven (7) days of the entry of this Order. As Defendant Huron Clinton does not move to dismiss Count IV of Plaintiff's Complaint, Plaintiff's claim of retaliatory discharge survives.

Plaintiff is **ORDERED** to file a Motion for Leave to File an Amended Complaint, with an attached proposed Amended Complaint, within 30 days of the date of this Order.

DATED: September 18, 2020.

BY THE COURT:

/s/Terrence G. Berg
TERRENCE G. BERG
United States District Judge